**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| NULANKEYUTMONEN NKIHTAQMIKON, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 05-CV-00188 JAW  **PLAINTIFF'S REPLY IN SUPPORT OF PETITION FOR ATTORNEY FEES AND COSTS UNDER FOIA** |
| *Plaintiff*, | | |
| v. | | |
| U.S. BUREAU OF INDIAN AFFAIRS and U.S. DEPARTMENT OF THE INTERIOR, | | |
| *Defendants* | | |

Plaintiff NN hereby submits this Reply in Support of its Petition for Attorney Fees and Costs Under FOIA. See Doc. 116. For the reasons discussed herein, the arguments raised by BIA in its Response have no merit. BIA's egregious noncompliance with FOIA and its aggressive litigation posture have caused NN to endure more than four years of litigation in order to obtain public records that it was entitled by statute to receive within twenty days of its FOIA requests in the summer of 2005. NN's request for $157,021 as reimbursement for the attorney fees it incurred during this protracted litigation is reasonable.

**I.  NN HAS PROPERLY LIMITED ITS ATTORNEY FEE REQUEST TO THE CLAIMS AND ISSUES UPON WHICH IT SUBSTANTIALLY PREVAILED.**

This Court has clearly explained which issues and claims were resolved in NN's favor and which were not. BIA's attempt to revisit this Court's rulings and muddy the waters should be disregarded. Furthermore, NN's proportionate approach to attorney fee reductions more faithfully adheres to this Court's instruction to limit its fees to the claims upon which it substantially prevailed than an across-the-board fifty percent reduction as BIA suggests.

As this Court explicitly ruled, BIA has failed to show that it "conducted a search reasonably calculated to uncover all relevant documents," and it has "improperly withheld

1

agency records by substantially delaying their identification and disclosure." Second Order, at 25, 30 (Doc. 108). Despite this unambiguous ruling, BIA is attempting to reopen the issue of whether it had a "reasonable basis for withholding" dozens of documents over a period of several years. See BIA Response, at 7-9 (Doc. 121). For instance, BIA contends that the issue of whether its withholding of documents was reasonable is "a confused one" and that there is a "tension" in this case between "proper withholdings" and "dribbling disclosures." See id. at 8. There is no such tension or confusion here. BIA has violated FOIA "on its face" by unreasonably delaying its identification and/or disclosure of several dozen[1] responsive documents over a period of "not days, weeks, or months, but years." Second Order, at 25.

By contrast, this Court ruled that BIA properly withheld just two documents -- the Trickey and Keel memoranda. See First Order (Doc. 105). NN has had no difficulty redacting its hours and reducing its attorney fee request to account for this discrete ruling in BIA's favor. The existence of the Keel document first became apparent to NN when BIA filed its Vaughn Index in November 2006, and the first pleading in which NN mentioned the Keel document was its Cross-Motion for Summary Judgment filed in December 2006 (Doc. 55). NN first learned of the existence of the Trickey memorandum more recently on June 25, 2008, and the first pleading in which NN mentioned the Trickey memo was its Supplemental Memorandum of Law in Support of NN's Rule 60(b) Motion (Doc. 89). See NN Req. Relief, at 6 (Doc. 100). NN has reduced its hours expended in preparing these and all subsequent briefs, pleadings, and other

---

[1] Because of the sporadic and overlapping nature of BIA's document disclosures over a long period of time, it is difficult to determine the precise number of documents that it ultimately released. By NN's calculations, BIA belatedly disclosed approximately fifty-eight documents to NN. As discussed in NN's Request for Relief, BIA disclosed five batches of documents in 2005 and 2006 (totaling approximately 27), another two batches of documents in 2008 (totaling approximately 21), and an eighth batch of ten documents in 2009. See NN Req. Relief, at 2-8 (Doc. 100).

filings mentioning the Trickey and Keel memoranda by a percentage roughly corresponding to the proportion of the total pages addressing the issue of whether these documents were properly withheld, along with similar reductions corresponding to the other issues upon which NN did not substantially prevail, as well as further reductions based on NN's billing judgment.[2]  See NN Fee Petition, Exs. 2, 3, and 4.

BIA's discussion of the Sullivan case reflects a misunderstanding of its reasoning.  See BIA Response, at 9 (discussing Sullivan v. City of Augusta, 625 F. Supp. 2d 28 (D. Me. 2009)).  After acknowledging the general rule that a court "must exclude from the fees application all hours expended on unsuccessful claims that are distinct from successful claims," id. at 41, this Court explained that the First Circuit's "interrelatedness" doctrine allows courts to consider "less than complete success" in adjusting the lodestar amount in order to avoid the potential unfairness of applying the general rule in a manner that reduces fees too much.  Id. at 42.  In the Court's estimation, the plaintiffs' and defendant's level of success in the case at hand were "roughly equal," and so it reduced the plaintiffs' fees by half rather than attempting to conduct a strict hour-by-hour analysis that might have reduced the plaintiffs' fees too much.  See id. at 47.  The Court did not hold, as BIA suggests, that whenever claims or issues are interrelated, the plaintiffs' attorney fees should always be reduced by half.[3]

---

[2] Although the Court expressed concern about the "unsettling haphazardness" of BIA's FOIA procedures, it stopped short of ruling in NN's favor on the pattern-and-practice issue.  See Second Order, at 27-28.  This Court also declined to reach the issue of whether the Open Government Act applied to this matter.  See Order on Rule 60(b) Motion, at 9-10 (Doc. 92).  As with the Trickey and Keel memoranda, NN has reduced its attorney fee request by a percentage roughly corresponding to the number of pages in each motion or brief devoted to the pattern-and-practice and OGA issues, along with more general reductions based on billing judgment.  See NN Fee Petition, Exs. 2, 3, and 4.

[3] See BIA Response, at 10 (explaining, based on Sullivan, that "the Court should impose a 50% reduction due to the mixed record of success and failure").

3

In the present situation, NN has offered a reasonable methodology for limiting its attorney fees using the number of pages in the key briefs and pleadings as a rough proxy for the amount of time devoted to claims upon which NN has, and has not, substantially prevailed. By contrast, BIA is proposing the use of a fifty percent reduction derived from another case with different facts, and it has not given any explanation as to whether or how such a reduction is appropriate in light of NN's degree of success on the various claims involved in this case. Accordingly, NN respectfully urges this Court to accept its approach to attorney fee reductions and disregard BIA's proposal.

## II.   NN'S STAFFING OF THIS LITIGATION HAS BEEN REASONABLE.

NN's staffing of this litigation has been reasonable. While the overall number of attorneys and student clinicians involved may seem high, it is the result of the long duration of this litigation and the inevitably high turnover rate in a law clinic setting. Upon closer inspection, the hours expended by supervisors, staff attorneys, and student clinicians were reasonable and consistent with standard practice in most law firms.

BIA contends that the "size of the Plaintiff's litigation team was excessive." BIA Response, at 5. This is an unfounded conclusion based on a superficial analysis of the Plaintiffs' staffing of this case. The Environmental & Natural Resources Law Clinic functions as a law firm within an academic setting. The bulk of the legal work is conducted by student clinicians (second- and third-year law students) and law fellows (staff attorneys with 1-6 years of experience who work part-time in the Clinic while pursuing their LLM degrees). Because the student clinicians have virtually no litigation experience and because the law fellows are relatively junior attorneys, both groups require ongoing supervision from the more experienced faculty at the Clinic. In the present case, supervision accounts for only 109 hours (10 percent) of

the hours claimed, while junior attorney and student clinician work accounts for 941 hours (90 percent).[4] This is consistent with the division of labor at most law firms, which rely on law clerks and junior associates for the majority of the day-to-day work involved in litigation, with higher level supervision provided by senior associates and partners. Even though this approach involves some duplication due to the need for oversight, it is generally cost-effective because a much lower hourly rate can be charged for less experienced law clerks and associates.

Another important consideration is the natural turnover inherent in a law clinic setting. Each year, three groups of student clinicians work in the Clinic, one group during the fall semester, one group during the spring semester, and one group during the summer. The law fellows generally work at the Clinic for a one- or two-year term. Since the commencement of this case in the fall of 2005, a total of fourteen semesters have passed, meaning fourteen groups of student clinicians have worked in the Clinic, as well as three law fellows. NN is seeking reimbursement for just ten students who have worked on this matter, i.e., an average of less than one student (0.71) per semester, as well as the two law fellows who devoted substantial time to this litigation.[5]

Nearly all of the hours claimed for supervising attorneys David Mears (all but 1.5 hours) and Pat Parenteau (all but 0.5 hours) were expended in 2006 and 2007. See Ex. 3. Teresa Clemmer joined the Clinic in early 2008 and took over supervisory responsibility for this litigation at that time. See id. This transition at the supervisory level further demonstrates that

---

[4] NN is seeking $90 per hour for 379 hours expended by student clinicians, $175-$200 per hour for 562 hours expended by law fellows/staff attorneys Justin Kolber and Ben Rajotte, and $225-$275 per hour for 109 hours expended by senior attorneys/faculty David Mears, Patrick Parenteau, and Teresa Clemmer. See NN Fee Petition, at 9-13.

[5] As noted previously, Justin Kolber has continued to serve as co-counsel in this litigation after his term at the Clinic ended and he went into private practice. See NN Fee Petition, at 10, Ex. 1, at 3, and Ex. 9, at 1.

the Clinic has not staffed this case with a "strike force of lawyers" as BIA contends.[6] Moreover, the low proportion of supervisory hours relative to the total hours (10 percent) demonstrates that the Clinic has neither overstaffed this case nor relied too heavily on high-priced senior attorneys.

## III.  NN'S BILLING RECORDS FULLY DOCUMENT AND SUPPORT ITS FEE REQUEST.

Courts generally require petitioners to provide contemporaneous records that describe "a full and specific accounting of tasks performed, the dates of performance, and the number of hours spent on each task." Tennessee Gas Pipeline Company v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994). NN has satisfied this requirement.

NN has provided this Court with records describing the tasks performed, dates of performance, and the number of hours spent on each task by both attorneys and student clinicians. See Exs. 3-4. The First Circuit has emphasized the importance of describing the "task" involved. For instance, in the Tennessee case, the party seeking fees relied on statements in billing records such as "'Confer with co-counsel,' 'Confer with client,' 'Review materials,' 'Review documents,' and 'Legal research.'" 32 F.3d at 634. Since this language did not provide "any indication of the subject matter involved," this made it "impossible for the court to gage [*sic*] whether the task was warranted." Id. As a result, the First Circuit affirmed the district court's reduction of the claimed fees by thirty percent. Id. See also Williams v. Poulos, 54 F.3d 764, 766 (1st. Cir. 1995) (unpublished) (a fee petition that offered "no indication of how much time was spent on each task" made determining a lodestar figure "virtually impossible").

In contrast to the facts of the Williams and Tennessee cases, the time records submitted by NN consistently indicate the particular brief, pleading, or other task involved for each time

---

[6] Defendants imply that the entry of an appearance is a prerequisite for claiming attorney fees. See BIA Response, at 4. However, fee recovery is not limited to those entering appearances. Indeed, it is customary to allow fee recovery for law clerks and paralegals who never enter appearances. *See Missouri v. Jenkins*, 491 U.S. 274, 284 n. 7 (1989); NN Fee Petition at 11-12.

6

entry. See Exs. 3-4. There is no requirement for parties to subdivide the hours they spend on each task to reflect the amount of time spent on each particular legal or factual issue. As BIA has acknowledged, the issues involved in this case are interrelated, making this level of detail impracticable. Nevertheless, through the use of a systematic approach based on the number of pages devoted to particular issues, NN has been able to reasonably estimate and exclude the hours spent in connection with the issues upon which it did not substantially prevail.

NN's time records are also sufficiently contemporaneous. The attorneys and students involved in this case have generally recorded their time on the same day or within a few days of when the work was done, either by directly entering their time into an electronic timekeeping program or by using paper timesheets, notes, or calendar entries. See Exs. 1, 7, 8, 9, 10, 11. In some instances, attorneys have reconstructed their hours using contemporaneous and reliable data, such the electronic time- and date-stamps automatically generated on emails and document profiles, or in a few cases by referring to pleadings indices. See Exs. 1, 7, 8, 9, 10, 11. Although NN believes its initial materials are adequate, in response to BIA's arguments, NN is submitting with this Reply additional declarations from each attorney that provide first-hand knowledge and individualized explanations of timekeeping methods. See Exs. 1, 7, 8, 9, 10, 11.

## CONCLUSION

For the reasons discussed herein and in NN's Fee Petition, NN respectfully requests that this Court grant it an award of attorney fees in the amount of $157,021, plus interest as authorized under 28 U.S.C. § 1961.

Dated: April 16, 2010          By:      /s/  Teresa B. Clemmer
                                        Teresa B. Clemmer
                                        David K. Mears
                                        Justin Kolber (Of Counsel)
                                        Environmental & Natural Resources Law Clinic
                                        Vermont Law School
                                        164 Chelsea Street, PO Box 96
                                        South Royalton, VT 05068-0096

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 16, 2010, I electronically filed Plaintiff's Reply in Support of its Petition for Attorney Fees and Costs Under FOIA with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

| | |
|---|---|
| *Evan J. Roth, Esq.* | *Robin A. Friedman, Esq.* |
| U.S. Attorney's Office | U.S. Department of Justice |
| District of Maine | Division of General Law |
| 100 Middle Street Plaza | U.S. Department of the Interior |
| Portland, ME  04101 | 1848 C Street NW, MS 7315 |
| | Washington, DC  20240 |

Dated:  April 16, 2010      /s/  Teresa B. Clemmer
      Teresa B. Clemmer
      Environmental & Natural Resources Law Clinic
      Vermont Law School
      164 Chelsea Street, PO Box 96
      South Royalton, VT 05068-0096

      *Attorneys for Plaintiff*